UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

-against-

NESTOR MARCELIN DELACRUZ SANTANA,

              Defendant.

MEMORANDUM & ORDER
16-CR-00337 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Nestor Marcelin Delacruz Santana brings this *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i),[1] as amended by the First Step Act of 2018, and for a reduction in sentence under 18 U.S.C. § 3582(c)(2). (Mot. for Reduction ("Mot.") (Dkt. 77).) The Government opposes the motion. (Gov't Opp. to Mot. ("Opp.") (Dkt. 78).) For the reasons set forth below, Mr. Delacruz Santana's motion is DENIED.

## I. BACKGROUND

Mr. Delacruz Santana was a member of a sophisticated robbery ring which targeted narcotics distributors along the east coast of the United States. (Presentence Investigation Report ("PSR") ¶¶ 3, 4.) The group's modus operandi included impersonating police officers and torturing victims into revealing the locations of their drugs and drug proceeds. (*Id.* ¶ 3.) On May 9, 2003, Mr. Delacruz

---

[1] Although Mr. Delacruz Santana does not explicitly cite section 3582(c)(1)(A)(i) in his motion, given his *pro se* status and use of the relevant language—extraordinary and compelling reasons—from section 3582(c)(1)(A)(i) in his papers, the court construes his motion as a compassionate release motion. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (acknowledging "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*'" (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006))) (collecting cases).

1

Santana orchestrated the robbery and murder of Francisco Del Orbe, to whom Mr. Delacruz Santana owed substantial debts from their joint drug trafficking endeavors. (*Id.* ¶¶ 6, 7.) Mr. Delacruz Santana and his associates lured Mr. Del Orbe into Mr. Delacruz Santana's vehicle and beat him into disclosing the location of his drugs and money. (*Id.* ¶ 7.) After stealing Mr. Del Orbe's narcotics and cash, Mr. Delacruz Santana directed one of his associates to murder Mr. Del Orbe by injecting him with heroin. (*Id.*) When the heroin did not act quickly enough, Mr. Delacruz Santana instructed an accomplice to execute Mr. Del Orbe with a firearm. (*Id.*) Mr. Delacruz Santana's associate followed the instructions and shot Mr. Del Orbe in the back of the head. (*Id.*) Thereafter, the robbery crew burned the vehicle. (*Id.*) On May 11, 2003, Mr. Del Orbe's body was discovered in a Pennsylvania suburb with a gunshot wound to the lower left region of his neck that travelled to his right temple. (*Id.* ¶ 5.)

More than 13 years later, on July 1, 2016, Mr. Delacruz Santana was arrested for his involvement in the murder of Mr. Del Orbe. (*Id.* ¶ 8.) On January 12, 2018, Mr. Delacruz Santana pleaded guilty, pursuant to a plea agreement, to Count Two of the Superseding Indictment, which charged him with the commission of a drug-related murder, specifically the murder of Francisco Del Orbe, in violation of 21 U.S.C. § 848(e)(1)(A). (Min. Entry dated 01/12/2018 (Dkt. 45); Judgment (Dkt. 75) at 1; Superseding Indictment (Dkt. 24) ¶ 2.) As such, pursuant to 21 U.S.C. § 848(e)(1)(A), Mr. Delacruz Santana was subject to a statutory minimum sentence of 20 years and a maximum sentence of life in prison. (*See* Sent'g Tr. at 20:5-7; Gov't Sent'g Mem. (Dkt. 69) at 2.)

At sentencing, on September 9, 2021, the court found that Mr. Delacruz Santana had a total offense level of 44 and was in Criminal History Category I. (Sent'g Tr. at 5:23-5:25). This resulted in an applicable United States Federal Sentencing Guidelines (the

"Guidelines" or "Sentencing Guidelines") recommendation of life in prison. (*Id.* at 5:25-6:1, 20:7.) The undersigned sentenced Mr. Delacruz Santana to a below-guidelines term of 300 months' imprisonment. (*Id.* at 30:1-6; Judgment at 2.)[2] The court did not impose any term of supervised release because Mr. Delacruz Santana is subject to removal from the United States. (*Id.* at 30:5, 30:12-15; Judgment at 3.)

On April 30, 2024, Mr. Delacruz Santana moved *pro se* for compassionate release[3] under 18 U.S.C. § 3582(c)(1)(A)(i) and for a reduction in sentence under 18 U.S.C. § 3582(c)(2). (*See generally* Mot.) He contends that his medical conditions constitute extraordinary and compelling reasons warranting an unspecified reduction of his sentence. (*Id.* at 2-3.) The Government opposes the motion, arguing that Mr. Delacruz Santana's health conditions are not extraordinary because they are long-term and existed before he was arrested. (Opp. at 1.) The court analyzes Mr. Delacruz Santana's motion under both sections: 18 U.S.C. §§ 3582(c)(1)(A)(i) and 3582(c)(2).

## II. LEGAL STANDARD

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Rabuffo*, No. 16-CR-148 (ADS), 2020 WL 2523053, at *1 (E.D.N.Y. May 14,

---

[2] At sentencing, the Government clarified that it made an error in its estimation of the Guidelines range in the plea agreement—estimating that it was 292 to 365 months rather than life in prison—based on which Mr. Delacruz Santana agreed to plead guilty. (*See* Sent'g Tr. at 5:6-22; *see also* Gov't Sent'g Mem. at 3.) The Government had no objection to the court factoring this into its final sentencing determination. (Sent'g Tr. at 5:11-13.)

[3] While courts refer to motions under 18 U.S.C. § 3582(c)(1)(A) as "compassionate release" motions, the statute speaks in terms of sentence reduction as opposed to release. *See* 18 U.S.C. § 3582(c)(1)(A). In reference to Mr. Delacruz Santana's motion, this court uses "sentence reduction" and "compassionate release" interchangeably.

3

2020).[4] One of the exceptions to this rule is contained in 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. Although often colloquially referred to as the "compassionate release" statute, section 3582(c)(1)(A) permits sentence reductions of any length, including immediate release. *Reynolds v. United States*, No. 99-CR-520 (NGG), 2022 WL 1444167, at *4 (E.D.N.Y. May 6, 2022); *see also United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) (explaining that "compassionate release" is a misnomer). Section 3582(c)(1)(A) allows courts to reduce a defendant's sentence upon motion of either the Director of the Federal Bureau of Prisons ("BOP") or the defendant. As such, under section 3582(c)(1)(A)(i), "after considering the factors set forth in [18 U.S.C. §] 3553(a)," a court may reduce the term of imprisonment for a defendant who has exhausted their administrative remedies and demonstrated that extraordinary and compelling reasons warrant a sentence reduction.

A "defendant's failure to exhaust administrative remedies is a threshold matter preventing the Court from considering a Section 3582 application." *United States v. Alvarez*, No. 89-CR-229 (JS), 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020). To that end, a defendant may move for compassionate release only after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The "exhaustion requirement is a case processing rule, not a jurisdictional limitation." *United States v. Messina*, No. 11-CR-31 (KAM), 2024 WL 2853119, at *4 (E.D.N.Y. June 4, 2024) (citing *United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021)).

---

[4] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

Where exhaustion is satisfied, a court may grant an application for compassionate release if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission (the "Sentencing Commission") lists examples of extraordinary and compelling reasons warranting sentence reductions. *See generally* U.S. Sent'g Comm'n, Guidelines Manual ("U.S.S.G.") § 1B1.13(b) (amended Nov. 1, 2023). They include, among others, a defendant's medical circumstances. *See* U.S.S.G. § 1B1.13(b)(1).

If the court finds that the defendant has not satisfied one of the requirements for compassionate release—exhaustion of administrative remedies, satisfaction of the section 3553(a) factors, or extraordinary and compelling reasons—it need not address all three of them. *See United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021). Nevertheless, district courts may analyze all three independent requirements to aid appellate review. *See United States v. Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021). And "district courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *United States v. Antney*, No. 17-CR-229 (CBA), 2021 WL 4502478, at *1 (E.D.N.Y. Sept. 30, 2021) (citing *Brooker*, 976 F.3d at 237).

Another relevant exception to the general rule that a court may not modify a term of imprisonment after imposing one is covered by 18 U.S.C. § 3582(c)(2). Section 3582(c)(2) allows for a sentencing reduction where a defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." To that end, when considering a motion to reduce a sentence pursuant to section 3582(c)(2), courts undertake a two-part inquiry:

> At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in [U.S.S.G.] § 1B1.10 to

> determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. . . . At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized . . . is warranted in whole or in part under the particular circumstances of the case.

*Dillon v. United States*, 560 U.S. 817, 827 (2010).

Thus, before considering the section 3553(a) factors to determine whether the court will exercise its discretion to reduce the defendant's sentence, "the district court must first determine the amended guideline range that would have been applicable to the defendant if the amendment had been in effect at the time the defendant was sentenced." *United States v. Baez*, No. 19-CR-463 (DLC), 2024 WL 1250583, at *1 (S.D.N.Y. Mar. 22, 2024). However, the Sentencing Commission's policy statement provides that, with an exception not relevant here,[5] "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1) of this subsection." U.S.S.G. § 1B1.10(b)(2)(A); *see also United States v. Perez*, No. 22-CR-122 (JMA) (AYS), 2024 WL 2293828, at *1 (E.D.N.Y. May 21, 2024). Lastly, section 1B1.10(a)(2) provides that "a sentence reduction is not authorized under 18 U.S.C. § 3582(c)(2) if none of the amendments listed in subsection (d) . . . is applicable to the defendant." *United States v. Tejeda*, No. 11-CR-1015 (DC), 2024 WL 1676329, at *1 (S.D.N.Y. Apr. 18, 2024) (citing U.S.S.G. § 1B1.10(a)(2)(A)).

---

[5] U.S.S.G. § 1B1.10(b)(2)(B) (outlining a limited exception applicable only where a defendant provides substantial assistance to the government).

## III. DISCUSSION

### A. Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i)

First, Mr. Delacruz Santana argues that his medical conditions, worsened by a new COVID-19 variant, rise to the level of extraordinary and compelling reasons justifying compassionate release or a reduction in his sentence. (Mot. at 2-3, 5.)

#### 1. Exhaustion of Administrative Remedies

Mr. Delacruz Santana has not exhausted his administrative remedies. The Second Circuit has held the administrative exhaustion requirement of section 3582(c)(1)(A) to be a mandatory claim-processing rule rather than a jurisdictional one, stating that the government may therefore waive or forfeit the requirement. *Saladino*, 7 F.4th at 121. And although it has not explicitly decided whether the administrative exhaustion requirement of section 3582(c)(1)(A) is waivable by courts, the Second Circuit has construed exhaustion requirements under other statutes as so waivable. *See Washington v. Barr*, 925 F.3d 109, 118-19 (2d Cir. 2019) (noting the requirement that plaintiffs exhaust administrative remedies under the Controlled Substances Act is subject to waiver by the court where "pursuing agency review would subject plaintiffs to undue prejudice.").

Some district courts within the Second Circuit have waived this requirement in contexts where exhaustion would be futile, the administrative process would be incapable of granting adequate relief, or pursuing agency review would result in undue prejudice. *See United States v. Fragoso*, No. 18-CR-179 (JMA), 2021 WL 5205633, at *2 (E.D.N.Y. Nov. 9, 2021) (acknowledging that the district court may waive the administrative exhaustion requirement of section 3582(c)(1)(A) on the basis of *Washington v. Barr*); *see also United States v. Sawicz*, 453 F. Supp. 3d 601,

604 (E.D.N.Y. 2020) (waiving the exhaustion requirement because of COVID-19 outbreak at the defendant's facility and his high risk of suffering severe complications from the virus). Other courts have refused to do so. *See Alvarez*, 2020 WL 4904586, at *3 (finding no reason to waive the exhaustion requirement where "there are no time constraints that would render exhaustion futile" and "Defendant does not provide the Court with the documentation necessary to show" exhaustion); *see also United States v. Roberts*, 612 F. Supp. 3d 351, 354 (S.D.N.Y. 2020) (acknowledging that the exhaustion provision must be strictly enforced and that "the Court is not free to infer a general unwritten special circumstances exception").

Mr. Delacruz Santana does not claim that he has submitted a request to the warden of the Federal Correctional Institution, Fort Dix ("FCI Fort Dix") to bring a compassionate release motion on his behalf. (*Cf.* Mot.) He also provides no documentation or specific information regarding any submissions made to the BOP. (*Cf. id.*) According to the Government, the BOP has not received any requests from Mr. Delacruz Santana. (Opp. at 4.) Mr. Delacruz Santana has not provided any reason as to why he never requested his warden to bring a motion on his behalf. Because the court cannot ascertain that Mr. Delacruz Santana has exhausted his administrative remedies, the court finds that he has not satisfied the exhaustion requirement. The court also finds that no exceptional circumstances exist warranting waiver of the statutory exhaustion requirement. As such, the court DENIES Mr. Delacruz Santana's compassionate release motion on this independent basis. For the reasons discussed below, even if this court were to waive the exhaustion requirement, Mr. Delacruz Santana is not eligible for compassionate release.

2.  Extraordinary and Compelling Reasons

Assuming *arguendo* that Mr. Delacruz Santana has exhausted his administrative remedies, he fails to show extraordinary and compelling reasons warranting a sentence reduction. To receive a sentence reduction under section 3582(c)(1)(A)(i), a defendant must demonstrate that "extraordinary and compelling reasons" support such reduction. The statute does not define what constitutes extraordinary and compelling reasons. Rather, it directs the court and the parties to reference the "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(b). The Sentencing Commission's policy statement enumerates four categories of medical circumstances to consider. *See* U.S.S.G. § 1B1.13(b)(1)(A)-(D).

First, extraordinary and compelling reasons exist if the defendant "is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Second, extraordinary and compelling reasons also exist if the defendant is suffering from "a serious physical or mental condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* § 1B1.13(b)(1)(B)(i). "[T]he mark for illustrating that a defendant has a serious physical or medical condition is a high one." *United States v. Mohammed*, Nos. 18-CR-509 (ENV), 20-CR-581 (ENV), 2024 WL 2701639, at *2 (E.D.N.Y. May 18, 2024) (explaining that courts within the Second Circuit describe this standard, among other things, "as requiring a showing of a debilitating injury from which [the defendant] will not recover"). Third, the policy statement also permits the defendant to show extraordinary and compelling reasons by arguing that "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health

9

or death." U.S.S.G. § 1B1.13(b)(1)(C). Fourth, medical circumstances establishing extraordinary and compelling reasons can also be triggered by the defendant's susceptibility to severe medical complications because the defendant's facility is at imminent risk of being affected by an outbreak of infectious disease or ongoing public health emergency. *See id.* § 1B1.13(b)(1)(D); *see also United States v. Donato*, No. 95-CR-223 (JMA) (AYS), 2024 WL 1513646, at *6 (E.D.N.Y. Apr. 8, 2024) (noting that "[t]his factor was informed by compassionate release decisions coming out of the COVID-19 pandemic").

Mr. Delacruz Santana asserts that his chronic health issues constitute extraordinary and compelling reasons for compassionate release, especially given the risk posed by a new COVID-19 variant in his facility. (*See* Mot. at 2-3.) As laid out in his motion and other relevant filings, Mr. Delacruz Santana suffers from a heart condition, type 2 diabetes, high blood pressure, and respiratory difficulties. (*Id*; Opp. at 2; Addendum to PSR (Dkt. 67) ¶ 37.) Given Mr. Delacruz Santana's *pro se* status, the court addresses each possible argument under the relevant policy statement in turn.

First, although undoubtedly serious, none of Mr. Delacruz Santana's ailments appear to have an "end-of-life trajectory," such that he would be considered terminally ill. *See* U.S.S.G. § 1B1.13(b)(1)(A). Nor does he claim that he is terminally ill. (*Cf.* Mot. at 2-3; Opp. at 4); *see United States v. Scronic*, No. 18-CR-43 (CS), 2020 WL 7048245, at *2 (S.D.N.Y. Nov. 30, 2020) (concluding that a 49-year-old defendant with elevated blood pressure and heart disease detained at FCI Fort Dix failed to show extraordinary and compelling reasons); *see also United States v. Mavumkal*, No. 17-CR-654 (RMB), 2020 WL 4365279, at *2-3 (S.D.N.Y. July 30, 2020) (denying compassionate release to 33 year-old defendant with severe obesity, diabetes, and high cholesterol). Indeed, Mr. Delacruz Santana has had "sleep apnea,

diabetes, high blood pressure and high cholesterol, and a cardiac condition" since before his sentencing in September 2021. (Def.'s Sent'g Mem. (Dkt. 68) at 5; Addendum to PSR ¶ 37.) Thus, this court finds that Mr. Delacruz Santana is not suffering from a terminal illness. *See United States v. Battle*, No. 5-CR-377 (VM), 2020 WL 4677414, at *1-2 (S.D.N.Y. Aug. 12, 2020) (finding that the defendant at FCI Fort Dix with severe chronic asthma and high cholesterol is not terminally ill).

Second, Mr. Delacruz Santana does not indicate that his ability to provide self-care at FCI Fort Dix has been substantially diminished by his illnesses. (*Cf.* Mot. at 2-3.) Where such evidence is lacking, courts within the Second Circuit have routinely denied compassionate release motions. *See, e.g., United States v. Sanchez*, No. 8-CR-789 (RJS), 2020 WL 4742916, at *2 (S.D.N.Y. June 17, 2020) (denying compassionate release where "nothing in the record suggests that [Defendant] has been 'unable to care for himself' or that he has 'been neglected by FCI Elkton medical personnel'") (collecting cases); *United States v. Figueroa*, No. 4-CR-515 (KAM), 2020 WL 6873433, at *4 (E.D.N.Y. Nov. 23, 2020) (denying compassionate release where the defendant did "not suggest that he has been unable to manage any medical condition he may have, or that the BOP has neglected his care") (collecting cases). Therefore, even assuming Mr. Delacruz Santana can meet the high threshold of illustrating that he is suffering from a serious physical or medical condition, the court finds that he has failed to show that his ability to provide self-care has been substantially diminished by his illnesses.

Third, Mr. Delacruz Santana argues that the BOP "does not offer any special diet," "has not been able to provide the proper or adequate treatment" associated with his medical conditions, and "has not been able to determine the cause or reasons" for his medical issues. (Mot. at 2.) Aside from these conclusory statements, Mr. Delacruz Santana does not identify specific

deficiencies in the BOP's management of his conditions. And his "lay self-assessment of necessary treatment and deficiencies" is not enough. *See Mohammed*, 2024 WL 2701639, at *2-3 (denying relief where the defendant was not provided with "kidney and liver function tests required to treat her lupus, . . . a new regimen of medication, . . . or an appointment with a specialist for lupus"). Unlike the defendant in *Mohammed*, Mr. Delacruz Santana does not even point out any "specialized medical care" that he has requested that has not been provided by the BOP. *Id.* at *2.

In fact, the Government's letter states that, "according to a February 2024 health screen, the defendant was receiving medication and care for his non-insulin dependent diabetes, hypertension, heart disease and sleep apnea, among other non-acute medical issues." (Opp. at 4.) Mr. Delacruz Santana has not filed a reply to contest this. Nor does he present any medical records or concrete complaints to refute this representation. To the contrary, before he was sentenced and while he was in custody at the Metropolitan Detention Center in Brooklyn, New York, Mr. Delacruz Santana was hospitalized and treated at Kingsbrook Hospital in Brooklyn. (*See* Addendum to PSR ¶ 37; Opp. at 5); *see also United States v. Radulescu*, No. 19-CR-651 (SHS), 2024 WL 4200388, at *2 (S.D.N.Y. Sept. 16, 2024) (rejecting the defendant's argument that the BOP was not providing adequate medical care where the records reflected the opposite). Accordingly, the court concludes that there is no long-term or specialized medical care that the BOP has denied him.

Fourth, Mr. Delacruz Santana claims that the "new 'Covid Omicron XBB variant,' which has a higher mortality rate," makes him susceptible to medical complications, especially because the BOP does not provide testing for COVID-19. (*See* Mot. at 2-3.) But the mere possibility that Mr. Delacruz Santana, who has medical issues, may contract COVID-19 is not enough. *See United States v.*

*Gibson*, No. 17-CR-657 (JS) (ARL), 2020 WL 7343802, at *4 (E.D.N.Y. Dec. 14, 2020); *see also Donato*, 2024 WL 1513646, at *9 (noting that district courts within the Second Circuit "have repeatedly held that possible COVID-19 exposure" is not enough to demonstrate extraordinary and compelling reasons for a sentence reduction).

Additionally, Mr. Delacruz Santana is vaccinated. (Addendum to PSR ¶ 37.) Indeed, the Government claims that he has been vaccinated twice, which he does not contest. (Opp. at 5.) And courts within the Second Circuit have repeatedly recognized that "vaccination reduces the risk of contracting the COVID-19 virus and becoming seriously ill." *See United States v. Johnson*, 671 F. Supp. 3d 265, 273 (E.D.N.Y. 2023) (collecting cases). As such, any threat posed by the new COVID-19 variant is greatly mitigated. *Id.* at 274; *United States v. Mena*, No. 16-CR-850 (ER), 2021 WL 2562442, at *3 (E.D.N.Y. June 23, 2021) ("Access to an approved COVID-19 vaccine generally counsels against compassionate release based on COVID risk, due to the strong evidence of the effectiveness of each of the vaccines."); *United States v. Reiter*, No. 87-CR-132 (VSB), 2021 WL 1424332, at *8 (S.D.N.Y. Apr. 15, 2021) ("Because [the defendant] has been vaccinated, [his] health conditions and the spread of COVID-19 at [his facility] no longer present an 'extraordinary and compelling reason' for a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A)(i).") Relevant here, as of September 30, 2024, FCI Fort Dix reports only one active COVID-19 case among an inmate population of 3,781. See BOP, *Inmate COVID-19 Data*, available at https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited September 30, 2024). Furthermore, COVID-19 is no longer considered an ongoing public health emergency by the federal government. *See Radulescu*, 2024 WL 4200388, at *2.

Taken together, given Mr. Delacruz Santana's vaccination status, the relatively low incidence of COVID-19 at Fort Dix, and the evident management of his symptoms, the court finds that the policy statement contained in section 1B1.13(b)(1)(D) does not support a sentence reduction based on the risks posed by COVID-19.

For the foregoing reasons, the court finds that Mr. Delacruz Santana has failed to demonstrate that extraordinary and compelling reasons exist warranting a reduction in his sentence pursuant to section 3582(c)(1)(A)(i).

### B. Sentence Reduction Under 18 U.S.C. § 3582(c)(2)

Second, Mr. Delacruz Santana's motion, read literally, is a "Petition for Reduction in Sentence Pursuant to *18 U.S.C. § 3582(c)(2)* Compassionate Release." (Mot. at 1 (emphasis added).) Similarly, Mr. Delacruz Santana's cover letter enclosing his motion also describes the latter as brought "pursuant to *[18] U.S.C. § 3582(c)(2)*." (Delacruz Santana Letter (Dkt. 77-1) (emphasis added).) Despite the foregoing references to section 3582(c)(2), Mr. Delacruz Santana does not advance any arguments based on that provision. (*Cf.* Mot.) Nor does he point to any modifications made by the Sentencing Commission that would retroactively lower his sentencing range. (*Cf id.*) As such, this court finds that Mr. Delacruz Santana is not eligible for a reduction under section 3582(c)(2) because he fails to demonstrate any modifications to show that his Guidelines range has been lowered after his sentencing on September 9, 2021. The court DENIES Mr. Delacruz Santana's motion for a reduction of sentence under section 3582(c)(2).

### C. 18 U.S.C. § 3553(a) Factors

Lastly, because Mr. Delacruz Santana is ineligible for the relief sought under both sections 3582(c)(1)(A)(i) and 3582(c)(2),

this court need not consider the section 3553(a) factors to determine whether a sentence reduction is warranted. *See Tejeda*, 2024 WL 1676329, at *2.

## IV. CONCLUSION

For the foregoing reasons, Mr. Delacruz Santana's motion for a reduction of his sentence pursuant to 18 U.S.C. §§ 3582(c)(1)(A)(i) and 3582(c)(2) is DENIED. The Clerk of Court is respectfully DIRECTED to mail a copy of this Memorandum and Order to Mr. Delacruz Santana's last known address of record.

SO ORDERED.

Dated: Brooklyn, New York
October 2, 2024

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge